OPINION OF THE COURT
Thomas A. Dickerson, J.
On October 16, 1993 the plaintiff, Amelia B. Bartolomeo, rented a cellar apartment in a two-family house at 117 Brandon Road, City of Yonkers, owned by the defendants, Mario and Filomena Runco. Before agreeing to rent the defendants’ cellar apartment, the plaintiff specifically asked if the apartment was a "legal” apartment and the defendants assured the plaintiff that it was.
*487 In reliance upon the defendants’ representations of legality the plaintiff signed a one-year lease which was to expire on October 30, 1994. The plaintiff agreed to pay a monthly rental of $670 and did so during the six months she resided in the cellar apartment. It seems that all went well between the defendant landlords and plaintiff tenant until March 23, 1994, some six months after the lease was entered into. On or about that day the defendant landlords received from the Bureau of Housing and Buildings of the City of Yonkers (Yonkers BHB) a notice of violation: "[the] Owners converted [their] Two-Family (2) Dwelling into a Three-Family (3) Multi Dwelling by constructing an illegal and non-habitable studio apartment in the cellar”.
The Yonkers BHB violation identified three code provisions which had been violated: 9 NYCRR 1242.1 (a) (5); section 33-5-1A of the Fire and Building Code of the City of Yonkers (Y.F. & B.C.); and Y.F. & B.C. § 33-5-6.
The Yonkers BHB violation was based upon a certificate of occupancy (C.O.) issued on June 24, 1960. The C.O. identified the house as a "Two Family Dwelling”. The C.O. permitted no one to live in the cellar. Thus, the defendants’ cellar apartment was an illegal apartment, in violation of the C.O., in violation of the NYCRR and Y.F. & B.C.
To cure the various code violations, the Yonkers BHB ordered the defendants to have the plaintiff vacate the cellar apartment. The plaintiff was forced to vacate on April 29, 1994 and paid $674 to a moving company to remove her possessions.
DISCUSSION
The widespread rental of illegal apartments is a serious problem in the City of Yonkers as it is elsewhere. Illegal apartments have been the subject of considerable litigation, primarily within the context of rental nonpayment actions brought by landlords. As a general rule the failure to have a proper C.O. or otherwise comply with fire and building codes prevents a landlord from prosecuting a rental nonpayment action. (See, e.g., Corbin v Harris, 92 Misc 2d 480, 483 [1977] [purpose of penalty provision: "to discourage landlords who would ignore building restrictions and offer an illegal apartment to an unsuspecting tenant”].) On the other hand, if the tenant knowingly occupies an illegal apartment then he may not seek the refund of paid rents. (See, e.g., Lipkis v Pikus, 99 *488 Misc 2d 518, affd 72 AD2d 697, appeal dismissed 51 NY2d 874, lv dismissed 56 NY2d 612 [1982].) Nor may tenants seek the refund of paid rents when they purposely prevent the landlord from making repairs necessary to obtain a C.O. (see, e.g., Chatsworth 72nd St. Corp. v Amiran Rigai, 71 Misc 2d 647, 651, affd 74 Misc 2d 298, affd 43 AD2d 685 [1973]), or where the tenant occupies a legal apartment in a building with one or more illegal apartments (see, e.g., Chan v Kormendi, 118 Misc 2d 1026 [1983]).

Breach Of Contract

The plaintiff entered into a rental contract with the defendants whereby plaintiff would occupy a cellar apartment located at 117 Brandon Road, City of Yonkers, during the period October 16, 1993 to October 30, 1994, for a total rental of $8,375, payable in monthly installments of $670. In addition, the defendants represented to the plaintiff that the cellar apartment was a legal apartment. The plaintiff fulfilled her contractual obligations under the lease, gave defendants a security deposit and paid defendants the agreed upon monthly rent. The defendants, however, forced plaintiff to vacate her cellar apartment on April 30, 1994, six months prior to the expiration of the lease.
The defendants did so at the urging of the Yonkers BHB which found the cellar apartment to be illegal in that it was not permitted by the C.O. and was in violation of the NYCRR and the Y.F. & B.C. The defendants knew that the cellar apartment was illegal. Nonetheless the defendants misrepresented the cellar apartment as legal and rented it to the plaintiff.
The defendants had a duty, both at common law and by statute, to rent plaintiff a legal apartment which complied with the NYCRR and Y.F. & B.C. The defendants breached that duty. (See, e.g., Roli-Blue, Inc. v 69/70th St. Assocs., 119 AD2d 173, 177 [1986] ["an obligation on the part of a landlord to maintain a building’s certificate of occupancy will be implied if it may rightfully be assumed that the parties would themselves have imposed such an obligation had their attention been drawn to it, and their conduct inspired by principals of justice”]; Various Tenants of 155 E. 52nd St. v GSL Enters., NYLJ, Oct. 10, 1990, at 22, col 5, at 23, col 1; 18 HCR 475 [Sup Ct] ["a residential landlord is obligated to obtain a proper residential certificate of occupancy and to remove building *489 violations for the protection of tenants”]; Aero Garage Corp. v Hirschfeld, 185 AD2d 775 [1992] [breach of contract in failing to obtain C.O.; punitive damages]; 9 NYCRR 1242.1 [a] [5]; Y.F. & B.C. §§ 33-5-1A, 33-5-6.)
The defendants also had a duty to deal fairly and in good faith with the plaintiff. The defendants breached that duty. (See, e.g., Roli-Blue, Inc. v 69/70th St. Assocs., supra, at 177 ["moreover, 'every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement’ ”]; SJR Communications v Plaza Madison Assocs., NYLJ, June 13, 1991, at 27, col 5; 19 HCR 364 [Sup Ct] [every contract carries with it a duty of good faith and fair dealing].)
The defendants willfully breached the rental contract with the plaintiff in such a manner as to strike at the very heart of the transaction. The defendants are liable for all appropriate damages flowing from their breach of contract including, but not limited to, the plaintiff’s moving expenses and the aggravation and discomfort she experienced in being forced to vacate her cellar apartment.

Breach Of Warranty Of Quiet Enjoyment

Defendants expressly warranted in the lease that for the duration of plaintiffs tenancy she "shall and may peaceably and quietly have, hold and enjoy the leased premises”. Whatever peace and quiet the plaintiff may have enjoyed in the cellar apartment, it abruptly came to end on or about March 23, 1994. On or about that date the Yonkers BHB informed the defendants, and then the plaintiff, that the cellar apartment was illegal and that plaintiff would have to vacate by April 30, 1994.
The defendants breached their warranty of quiet enjoyment by willfully failing to rent plaintiff a legal apartment in compliance with the NYCRR and Y.F. & B.C. (see, e.g., 74 NY Jur 2d, Landlord and Tenant, §§ 250, 260, 266; see also, Various Tenants of 155 E. 52nd St. v GSL Enters., supra; Roli-Blue, Inc. v 69/70th St. Assocs., supra). As a consequence of defendants’ failure to follow applicable regulations the Yonkers BHB declared the cellar apartment illegal and ordered that the cellar apartment be vacated. The action of the Yonkers BHB was caused solely by defendants’ failure to meet the requirements of the C.O. and the NYCRR and Y.F. & B.C. (see, e.g., Al’s 334 9th Ave. Corp. v Herbener, 83 NYS2d 676 *490 [Sup Ct 1948] [landlord liable for damages arising from eviction of tenant by municipality and breach of covenant of quiet enjoyment; landlord failed to follow applicable regulations and make building safe]). The defendants are liable for all appropriate damages flowing from their breach of warranty of quiet enjoyment.

Violation Of General Business Law § 349

General Business Law § 349 prohibits deceptive and unfair business practices and applies to a wide spectrum of commercial transactions including those at issue. General Business Law § 349 is a broad, remedial statute (see, e.g., Moldovan, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook Rev 509 [1982]) directed towards giving consumers a powerful remedy to right commercial wrongs. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect, and (2) proof that plaintiffs were injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [Sup Ct 1987]; Geismar v Abraham & Strauss, 109 Misc 2d 495 [Suffolk Dist Ct 1981]; Vallery v Bermuda Star Line, 141 Misc 2d 395 [1988] [misrepresented cruise]). There is no requirement under General Business Law § 349 that plaintiff prove that defendants’ practices or acts were intentional, fraudulent or even reckless. Nor is there any requirement under General Business Law § 349 that plaintiff prove that she relied upon defendants’ misrepresentations and deceptive practices.
In this case the defendants represented to the plaintiff that the cellar apartment was a legal apartment. This representation was false, misleading and deceptive. Plaintiff relied upon this misrepresentation, entered into a one-year lease, moved into the cellar apartment, paid six months’ rent and then was forced to vacate the cellar apartment. The defendants have violated General Business Law § 349 and are liable to the plaintiff for all damages permitted thereunder.

Fraudulent Misrepresentation

In this case the defendants knew that their C.O. did not permit them to rent their cellar to anyone. Knowing this the defendants remodeled their cellar, installed a kitchen and *491 rented it to the plaintiff. The defendants knew that the cellar apartment was illegal and not in compliance with the NYCRR and Y.F. & B.C. Nonetheless the defendants represented to the plaintiff that the cellar apartment was a legal apartment. This representation was false, was known to be false and was made to induce the plaintiff to enter into a lease. The plaintiff relied upon defendants’ misrepresentation, entered into the lease and was forced to vacate the cellar apartment six months later.
The necessary elements of a cause of action for fraudulent misrepresentation are (1) representations, (2) falsity, (3) scienter, (4) reliance, and (5) damages (see, Reno v Bull, 226 NY 546 [1919]; Seymour Winick, Inc. v Ariana Realty Co., 171 AD2d 785 [1991] [cause of action for breach of contract and fraud stated]). All of these necessary elements of a fraud cause of action are met in this case and the defendants are liable to the plaintiff for all appropriate damages arising therefrom.
DAMAGES
The court finds defendants liable to the plaintiff on the following causes of action: (1) breach of contract, (2) breach of warranty of quiet enjoyment, (3) violation of General Business Law § 349, and (4) fraudulent misrepresentation.
The court awards the following damages to the plaintiff.
First, damages will include the $674 in moving expenses incurred by the plaintiff. At trial plaintiff had sought damages equal to seven months worth of gas and electric payments valued at $490. There is no basis for awarding such damages. Hence, plaintiff’s actual damages are $674.
Second, pursuant to General Business Law § 349 (h) the court finds that defendants willfully violated General Business Law § 349. Although the court would like to treble plaintiff’s actual damages of $674, the maximum increase permissible (see, Hart v Moore, 155 Misc 2d 203 [1982]) would be $326 raising recoverable damages under General Business Law § 349 to $1,000.
 Third, the plaintiff suffered aggravation, annoyance, harassment, inconvenience and discomfort because she was forced to move out prior to the expiration of her lease. Such damages are appropriate under a breach of contract (see, e.g., Kupferman v Pakistan Intl. Airlines, 108 Misc 2d 485 [1981] [breach of contract]) and under a breach of warranty of quiet enjoyment (see, I. H. P. Corp. v 210 Cent. Park S. Corp., 16 *492 AD2d 461, affd 12 NY2d 329 [1963] [breach of covenant of quiet enjoyment; compensatory and punitive damages awarded]). The court awards plaintiff $250 for her discomfort and aggravation.
Fourth, the court finds the defendants’ misconduct in fraudulently misrepresenting the illegal cellar apartment as a legal apartment to be morally culpable (see, Walker v Sheldon, 10 NY2d 401 [1961]; Nitti v Credit Bur., 84 Misc 2d 277 [1975] [willful violation of Federal Fair Credit Reporting Act; punitive damages of $10,000]; I. H. P. Corp. v 210 Cent. Park S. Corp., 16 AD2d 461, affd 12 NY2d 329 [1963], supra [breach of covenant of quiet enjoyment; punitive damages awarded]). Punitive damages are appropriate in this case and are needed to deter other landlords from renting illegal apartments and willfully violating applicable NYCRR and Y.R. & B.C. provisions. Further, such damages will encourage the defendants from misrepresenting the legal status of the apartments they may rent to the general public. The court awards plaintiff punitive damages of $250.
[Portions of opinion omitted for purposes of publication.]